# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

ROBIN ADAIR SMITH,           )
                             )
    Plaintiff,              )
                             )
        v.                   )    Case No. CIV-14-398-SPS
                             )
CAROLYN W. COLVIN,           )
Acting Commissioner of the Social )
Security Administration,     )
                             )
    Defendant.              )

## OPINION AND ORDER

The claimant Robin Adair Smith requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot,

considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born August 17, 1968, and was forty-four years old at the time of the administrative hearing (Tr. 450, 523). She completed high school and two years of college, and has worked as a cashier/stocker and department manager (Tr. 439, 553). The claimant alleges she has been unable to work at the level of substantial gainful activity since March 15, 2010, due to deteriorating vertebrae, diabetes, varicose veins, and arthritis (Tr. 553).

## Procedural History

On December 15, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ J. Frederick Gatzke conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 19, 2012 (Tr. 430-441). The claimant submitted numerous additional records to the Appeals Council, but the Appeals Council denied review, stating that the records submitted did not provide a basis for changing the ALJ's decision and that it contained new information that pertained to a later time and therefore did not affect the ALJ's decision (Tr. 1-2). Accordingly, the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. See 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform less than the full range of sedentary work, 20 C.F.R. § 404.1567(a), *i. e.*, she could lift/carry ten pounds occasionally and less than ten pounds frequently, stand/walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday, but she must not have a job involving exposure to dusts, fumes, or volatile chemicals; must have the intermittent opportunity to alternate between sitting and standing; and can perform detailed, but not complex, work instructions (Tr. 434). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform, *i. e.*, order clerk and clerical mailer (Tr. 439-440).

## Review

The claimant contends that the ALJ erred by: (i) failing to state the frequency of her sit/stand option, (ii) failing to account for her obesity in crafting her RFC, (iii) failing to develop the record as to her mental impairments, and (iv) improperly rejecting a statement by her treating physician that was submitted to the Appeals Council. The Court agrees with the claimant's second and fourth contentions, and the decision of the Commissioner should therefore be reversed.

The ALJ determined that claimant has the severe impairments of obesity, lumbar degenerative disc disease, bilateral knee osteoarthritis, COPD, non-insulin-dependent diabetes mellitus, and varicose veins, as well as the nonsevere impairments of hypertension, fatigue, and gallbladder removal (Tr. 432-433). Additionally, the ALJ

found that the claimant did not have a medically determinable mental impairment (Tr. 433). The relevant medical evidence reflects that the claimant's weight ranged from 380 to 423 pounds from 2010 to 2012, indicating a BMI of 64.4 in August 2012 (Tr. 751, 781, 889).

On January 27, 2011, Dr. Gordon B. Strom conducted an internal medicine evaluation of the claimant (Tr. 690). He noted that she had limited flexion and extension of her thoracic and lumbar spine, largely related to her obesity, that she had limited hip flexion and could flex both knees but had bilateral crepitus (Tr. 691). Additionally, he noted that she likely weighed over 400 pounds, had difficulty moving about the clinic, wore a support stocking and gauze due to a recent ruptured varicose vein, and had multiple varicosity and stasis dermatis (Tr. 691). As to her mental status, he noted "obviously depression about her situation and her obesity," and noted that she would benefit from aggressive weight reduction but would likely require bariatric surgery (Tr. 692). He assessed her with morbid obesity greater than 350 pounds, degenerative joint disease involving both knees, recurrent venous status with venous varicosities involving both lower extremities, diabetes, hypertensive cardiovascular disease, shortness of breath likely related to cardiovascular disease, and also could not rule out asthma as a diagnosis (Tr. 692).

A state reviewing physician determined that the claimant could perform sedentary work with postural limitations of only occasionally climbing ramps/stairs, balancing, stooping, and crouching, and never climbing ladders/ropes/scaffolds, kneeling, or crawling due to her degenerative joint disease and morbid obesity (Tr. 705-706).

Evidence submitted to the Appeals Council from the Rubin White Clinic revealed more information regarding the claimant's condition and treatment (Tr. 8-423, 860-987). Notable here, the claimant's certified physician assistant, Albert E. McLemore, completed a medical opinion regarding absences from work and sedentary work requirements. Mr. McLemore indicated that the claimant would likely be absent from work three or more days per month, due to, *inter alia*, lumbosacral disc disease, varicose veins with inflammation, COPD, and recurrent cellulitis lower extremities (Tr. 359). Additionally, he indicated that the claimant: *could not* stand and/or walk up to two hours in an eight-hour workday, sit for up to six hours in an eight-hour workday, lift and carry ten pounds, lift five pounds repetitively, maintain her head in a flexed downward position for extended periods in an eight-hour workday, sustain activity at a pace and with the attention to task required of a competitive workforce, medically sustain normal work stress, or be expected to attend any employment on a sustained basis (Tr. 360). Furthermore, he indicated she: would require elevation of her legs, could use her hands for fine manipulation, would likely have significant difficulty concentrating, would likely need to take unscheduled breaks, and had the nonexertional impairments of COPD and lumbosacral disc disease that would substantially restrict her ability to function (Tr. 360). He indicated that if the claimant engaged in more activity than described above, she experienced a decreased range of motion of the back, edema of the legs, and worsening of varicosities (Tr. 360). As for his treatment relationship, he indicated that he saw the claimant monthly, and that she could walk less than one city block without rest or severe pain, could sit for thirty minutes at a time, and could stand for thirty minutes at a time

(Tr. 361-362). After indicating a number of other postural limitations, Mr. McLemore concluded his assessment by indicating that his description of her limitations applied beginning February 15, 2011, and the assessment was completed on September 10, 2013 (Tr. 363-365).

In his written opinion, the ALJ summarized much of the medical evidence, as well as the claimant's hearing testimony, which was given prior to her obtaining representation. At step three, the ALJ noted that claimant weighed 417 pounds on September 5, 2012, then stated that "[n]o treating or examining physician has imposed any limitation or restriction in connection with the claimant's obesity. The undersigned has carefully considered the effect of the claimant's obesity on her level of functioning. The following [RFC] assessment reflects the degree of limitation found in connection with her obesity" (Tr. 434). At step four, he stated that her knees were within normal limits upon treatment provider examination, but that she had crepitus bilaterally with limited flexion "thought to be due to obesity" (Tr. 436). He noted Dr. Strom's exam findings that she had very limited ability to stand, and cannot stoop or bend, but gave the opinion "little weight," because "it does not provide a specific vocational restriction" and "the findings as a whole do not indicate limitations of motion to support his opinion that she cannot stoop or bend" (Tr. 437). He then gave the state reviewing physician opinion little weight as well, finding the postural limitations largely based on "speculations as to how the claimant's impairments would be expected to affect her rather than the findings as a whole which are mostly within normal limits and indicate normal gait and 5/5 strength in all major muscle groups" (Tr. 437).

Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* Soc. Sec. Rul. 02-1p, 2002 WL 3486281, at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the Musculoskeletal System references obesity and explains that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately"; thus, the ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00 Musculoskeletal System, Q. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2002 WL 3486281, at *6. Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." *Id.*

Although the ALJ found the claimant had the severe impairment of obesity, he actually devoted a great deal of time at step four to ignoring the presence of this severe impairment and discrediting any opinion containing impairments based on her obesity. An explanation should be provided when, as here, an impairment found to be severe at step two is determined to be insignificant in later stages of the sequential evaluation. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe

impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. Additionally, the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing her RFC, or to consider whether the medical evidence demonstrated any additional or cumulative effects from her obesity. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC."), *citing* Soc. Sec. Rul. 02-01p, 2002 WL 3486281, at *1, *5-*6, *7; *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-01p on obesity applies at all steps of the evaluation sequence). This was important to do and, given the impact that obesity and poorly controlled diabetes can have on the cardiovascular and respiratory systems, as well as the musculoskeletal system, the ALJ erred in failing to consider *all* her impairments together. *See* Soc. Sec. Rul. 02-1p, 2002 WL 346862881, at *5. *See also DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ dequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on

'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p." ), *citing* Soc. Sec. R. 02-1p, 2002 WL 3486281, at *6.

The claimant's contention that the ALJ failed to properly evaluate all the medical evidence, particularly her limitations related to obesity, is bolstered by evidence submitted to the Appeals Council after the hearing, which included the additional treatment records and Mr. McLemore's assessment based on years of treatment. The Appeals Council was required to consider this evidence if it is: (i) new, (ii) material, and (iii) "related to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The Appeals Council *did* consider this evidence (Tr. 2), and the Court therefore has no difficulty concluding that it does qualify.

Evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). These records were not made available to the ALJ prior to his decision, and in fact provide more detail regarding her treatment than was previously a part of the record; thus it was neither duplicative nor cumulative. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question the disposition of the case." *Threet*, 353 F.3d at 1191. *See also Lawson v. Chater*, 1996 WL 195124, at *2 (10th Cir. April 23, 1996). In finding the claimant could perform a range of sedentary work, the ALJ relied, at least in part, on

the lack of statements from treatment providers as to her limitations. But Mr. McLemore's other source opinion strongly suggests that claimant could not work on a full-time basis due to her chronic pain-producing impairments, as well as her obesity. *See Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *1. This evidence suggests the claimant has impairments discounted or completely unaccounted for in her RFC, and it is therefore clearly material.

Finally, the evidence is chronologically relevant because it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). The evidence presented by the claimant after the administrative hearing thus *does* qualify as new and material evidence under C.F.R. §§ 404.970(b) and 416.1470(b), and the Appeals Council considered it, so the newly-submitted evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). In light of this new evidence, the Court finds that the decision of the Commissioner is not supported by substantial evidence because the ALJ had no opportunity to perform a proper analysis of the newly-submitted evidence in accordance with the authorities cited above, and the Commissioner's decision must therefore be reversed and the case remanded for further proceedings. On remand, the ALJ should re-

assess the claimant's RFC in light of the new evidence, and then re-determine the work she can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 24th day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**